FILED

SEP 13 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN CHRISTOPHER SMITH,

        Petitioner,        No. CIV S-09-0041-FCD-TJB

    vs.

D. K. SISTO,

        Respondent.        <u>ORDER AND FINDINGS AND RECOMMENDATIONS</u>

_____/

I. INTRODUCTION

Petitioner John Christopher Smith is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This Court: (1) denies Petitioner's requests; and (2) recommends that habeas relief be denied.

II. PROCEDURAL HISTORY

Petitioner is currently serving a sentence of 15 years to life following his 1991 conviction for second degree murder in the San Mateo County Superior Court. Petitioner is not currently challenging his conviction; rather, the instant petition challenges the decision by the California Board of Parole Hearings (the "Board") denying Petitioner parole. Petitioner appeared before the Board on October 17, 2008.

On January 29, 2008, Petitioner filed a petition for writ of habeas corpus with the San Mateo County Superior Court challenging the Board's decision. *See* Resp't's Answer Ex. 1, pt.

1

1, ECF No. 6. The Superior Court issued a reasoned opinion denying the petition on February 7, 2008. *See* Resp't's Answer Ex. 2. Petitioner sought relief in the California Court of Appeal, First Appellate District, and the California Supreme Court; those petitions were likewise denied, but without written opinions. *See* Resp't's Answer Exs. 3-9.

On January 6, 2009, Petitioner filed the instant federal petition for writ of habeas corpus. Respondent filed an answer to the petition on March 26, 2009, to which Petitioner filed a traverse on April 17, 2009.

### III. CONSENT

On January 14, 2009, Petitioner consented, pursuant to 18 U.S.C. § 636(c)(1), to have a magistrate judge conduct all further proceedings, including the entry of final judgment. *See* Consent to Jurisdiction by U.S. Magistrate Judge by John Christopher Smith, ECF No. 3. Respondent, however, failed to respond to the Court's January 7, 2009 Order re Consent issued by the Honorable John F. Moulds. *See* Order, Jan. 7, 2009, ECF No. 4. Accordingly, on August 17, 2010, the Clerk of Court was directed to assign a district judge to this action, and did so. *See* Order, Aug. 17, 2009, ECF No. 13; Clerk's Notice, Aug. 17, 2009, ECF Nos. 14-15.

### IV. FACTUAL BACKGROUND

> John Smith and Deborah Jacobson entered into a meretricious relationship and resided together in San Leandro, after both of them left their spouses. Smith and Jacobson had a love/hate relationship punctuated with physical and emotional arguments[,] [with] [e]ach telling their respective friends or relatives they wished to separate from each other. She repeatedly told her friends and relatives that she was afraid of Smith[,] [and] [t]hat he had assaulted her on occasion and had threatened to kill her. She told friends that they had engaged in sadomasochistic sexual practices. It appeared their interpersonal relationship was psychopathological in nature. Between October 20[], 1989, and October 22[], 1989, Smith and Jacobson got into an argument . . . as Smith was trying to leave her and return to his mother's home in Fairfield. As a result, Smith shot Jacobson point blank in the back of the head. On October 22[], 1989, Smith told James DeCamera . . . that he had shot Jacobsen. DeCamera went with Smith to Smith's apartment and he saw Jacobsen's body wrapped in sheets. Later that day, they tied her body in a tarp with weights and placed her body in the trunk of a vehicle. They drove to the high-rise section

2

1            on the San Mateo Bridge and threw her body into the Bay. A
           handgun and bullets were disposed of. On October 29[], 1989,
2            Jacobsen's body was found floating in the Bay near Foster City.
           An investigation led to Smith's arrest.[1]

4 Resp't's Answer Ex. 1, pt. 1, at 57-59; Parole Hr'g Tr. 12-14, Oct. 18, 2007 (Sept. 2007 Board

5 Report).

6       Petitioner comes from a relatively stable family with two siblings. *See* Resp't's Answer

7 Ex. 1, pt. 1, at 77-79; Parole Hr'g Tr. 32-34. Petitioner finished high school and received an AA

8 degree. *See* Resp't's Answer Ex. 1, pt. 1, at 80; Parole Hr'g Tr. 35. At the time of the

9 commitment offense, Petitioner worked as a mechanic for United Airlines in Oakland. *See*

10 Resp't's Answer Ex. 1, pt. 1, at 81; Parole Hr'g Tr. 36. Petitioner's family wrote letters in

11 support of his release, including an offer of residence. *See* Resp't's Answer Ex. 1, pt. 2, at 4-5;

12 Parole Hr'g Tr. 66-67.

13       Petitioner has performed well in prison. *See* Resp't's Answer Ex. 1, pt. 1, at 88-91, 102;

14 Parole Hr'g Tr. 43-46, 57. Petitioner completed numerous self-help programs. In November

15 2005, Petitioner passed the American Board of Optician Competency Exam with a score of 84%.

16 *See* Resp't's Answer Ex. 1, pt. 1, at 88-91, 102; Parole Hr'g Tr. 43-46, 57. The psychological

17 evaluation, dated August 17, 2007, classified Petitioner as being in the low range regarding

18 likelihood of violence. *See* Resp't's Answer Ex. 1, pt. 1, at 100-02; Parole Hr'g Tr. 55-57.

## V. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

20 An application for writ of habeas corpus by a person in custody under judgment of a state

21 court can be granted only for violations of the Constitution or laws of the United States. 28

22 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

23 *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

24 This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

---

[1] Petitioner was 25 years old when he committed the offense. Resp't's Answer Ex. 1, pt.
26 1, at 83; Parole Hr'g Tr. 38, Oct. 18, 2007.

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

In applying AEDPA's standards, the federal court must "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one state court has adjudicated a petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (finding presumption that later unexplained orders, upholding judgment or rejecting same claim, rests upon same ground as prior order)). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae,* 339 F.3d 1107, 1112-13 (9th Cir. 2003). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## VI. CLAIMS FOR REVIEW

The petition for writ of habeas corpus sets forth three requests and one ground for relief. Petitioner requests: (1) an order to show cause; (2) appointment of counsel; and (3) an evidentiary hearing. Pet'r's Pet., pt. 1, at 37, ECF No. 1. Petitioner also claims that the Board's

1 | parole denial violated his due process rights. *Id.* at 36-37.

2 |     A.  First Request:  Order To Show Cause

3 |     First, in his prayer for relief, Petitioner requests that this Court "issue an order to show
4 | cause why this writ should not issue." *Id.* at 37.  As stated earlier, Respondent filed an answer to
5 | the petition on March 26, 2009, to which Petitioner filed a traverse on April 17, 2009.
6 | Accordingly, the Court denies Petitioner's request for an order to show cause as moot.

7 |     B.  Second Request:  Appoint Counsel

8 |     Second, Petitioner requests appointment of counsel in further litigation of this action. *Id.*
9 | The Sixth Amendment right to counsel does not apply in habeas corpus actions. *See Knaubert v.*
10 | *Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986).  A district court, however, may appoint counsel to
11 | represent a habeas petitioner whenever "the court determines that the interests of justice so
12 | require," and such person is financially unable to obtain representation.  18 U.S.C. §
13 | 3006A(a)(2)(B).  The decision to appoint counsel is within the district court's discretion. *See*
14 | *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986).  The courts have made appointment of
15 | counsel the exception rather than the rule by limiting it to:  (1) capital cases; (2) cases that turn
16 | on substantial and complex procedural, legal, or mixed legal and factual questions; (3) cases
17 | involving uneducated or mentally or physically impaired petitioners; (4) cases likely to require
18 | the assistance of experts either in framing or in trying the claims; (5) cases in which the petitioner
19 | is in no position to investigate crucial facts; and (6) factually complex cases.  *See generally* 1 J.
20 | LIEBMAN & R. HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 12.3b, at 383-86
21 | (2d ed. 1994).  Appointment is mandatory only when the circumstances of a particular case
22 | indicate that appointed counsel is necessary to prevent due process violations.  *See Chaney*, 801
23 | F.2d at 1196; *Eskridge v. Rhay*, 345 F.2d 778, 782 (9th Cir. 1965).

24 |     The Court finds that appointment of counsel is not warranted in this case.  Petitioner's
25 | claims are typical claims that arise in habeas petitions and are not especially complex.  This is
26 | not an exceptional case that would warrant representation on federal habeas review.  The Court,

1 therefore, denies Petitioner's request for appointment of counsel.

2     C. Third Request: Evidentiary Hearing

3     Third, Petitioner requests an evidentiary hearing. Pet'r's Pet., pt. 1, at 37. Under 28
4 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary hearing must first
5 determine whether a factual basis exists in the record to support a petitioner's claims and, if not,
6 whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*, 187 F.3d 1075, 1078
7 (9th Cir. 1999); *see also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Insyxiengmay v.
8 Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). "[W]here the petitioner establishes a colorable
9 claim for relief and has never been afforded a state or federal hearing on this claim, we must
10 remand to the district court for an evidentiary hearing." *Earp*, 431 F.3d at 1167 (citing
11 *Insyxiengmay*, 403 F.3d at 670; *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir. 2004);
12 *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)). In other words, a hearing is required if:
13 "(1) [the defendant] has alleged facts that, if proven, would entitle him to habeas relief, and (2)
14 he did not receive a full and fair opportunity to develop those facts[.]" *Williams v. Woodford*,
15 384 F.3d 567, 586 (9th Cir. 2004).

16     Here, Petitioner's request does not establish that these requirements are satisfied such that
17 an evidentiary hearing would be appropriate. As explained later, Petitioner does not allege facts
18 that establish a colorable claim for relief because the Board's parole denial is supported by "some
19 evidence" demonstrating future dangerousness, and the Superior Court's decision is reasonable.
20 *See infra* Part VI.D. Accordingly, the Court denies Petitioner's request for an evidentiary
21 hearing.

22     Thus, this matter is now ready for decision. For the following reasons, the Court
23 recommends that habeas relief be denied.

24     D. Due Process Claim

25     Petitioner claims that the Board's parole denial violated his due process rights because
26 there was insufficient evidence in the record to support the decision. Specifically, Petitioner

1 argues that the Board: (1) "failed to follow the parole suitability determination procedures;" (2)
2 could not continue to rely on the nature and gravity of the commitment offense; (3) failed to give
3 "due consideration to the psychological report;" and (4) failed to weigh "petitioner's well-
4 documented future plans, educational and vocational upgrades, and over-all rehabilitation."
5 Pet'r's Pet., pt. 1, at 8-9. For the following reasons, Petitioner's claims lack merit.

          1. Legal Standard for Denial of Parole

7         The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives
8 a person of life, liberty, or property without due process of law. A person alleging a due process
9 violation must first demonstrate that he or she was deprived of a protected liberty or property
10 interest, and then show that the procedures attendant upon the deprivation were not
11 constitutionally sufficient. *Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989);
12 *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

13         A protected liberty interest may arise from either the Due Process Clause itself or from
14 state laws. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States Constitution
15 does not, in and of itself, create for prisoners a protected liberty interest in the receipt of a parole
16 date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). The full panoply of rights afforded a
17 defendant in a criminal proceeding is not constitutionally mandated in the context of a parole
18 proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme
19 Court has held that a parole board's procedures are constitutionally adequate if the inmate is
20 given an opportunity to be heard and a decision informing him of the reasons he did not qualify
21 for parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979). If a
22 state's statutory parole scheme uses mandatory language, however, it "'creates a presumption that
23 parole release will be granted' when or unless certain designated findings are made," thereby
24 giving rise to a constitutional liberty interest. *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz*,
25 442 U.S. at 12).

26         In California, Penal Code Section 3041 sets forth the state's legislative standards for

1  determining parole for life-sentenced prisoners. Subsection (a) provides that "[o]ne year prior to
2  the inmate's minimum eligible parole release date a panel . . . shall again meet with the inmate
3  and shall normally set a parole release date . . . ." Subsection (b) provides an exception to the
4  regular and early setting of a life-sentenced individual's term, if the Board determines "that the
5  gravity of the current convicted offense or offenses, or the timing and gravity of current or past
6  convicted offense or offenses, is such that consideration of the public safety requires a more
7  lengthy period of incarceration . . . ." Based on this statute, California state prisoners who have
8  been sentenced to prison with the possibility of parole have a clearly established, constitutionally
9  protected liberty interest in receipt of a parole release date. *Allen*, 482 U.S. at 377-78 (quoting
10 *Greenholtz*, 442 U.S. at 12); *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing *Sass v.
11 Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910,
12 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903.

13  Additionally, as a matter of California state law, denial of parole to state inmates must be
14 supported by at least "some evidence" demonstrating future dangerousness. *Hayward v.
15 Marshall*, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing *In re Lawrence*, 44 Cal. 4th
16 1181, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (2008); *In re Shaputis*, 44 Cal. 4th 1241, 82 Cal. Rptr.
17 3d 213, 190 P.3d 573 (2008); *In re Rosenkrantz*, 29 Cal. 4th 616, 128 Cal. Rptr. 2d 104, 59 P.3d
18 174 (2002)). California's "some evidence" requirement is a component of the liberty interest
19 created by the state's parole system. *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010). The
20 federal Due Process Clause requires, in turn, that California comply with its own "some
21 evidence" requirement. *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam).
22 Thus, a reviewing court such as this one must "decide whether the California judicial decision
23 approving the . . . decision rejecting parole was an 'unreasonable application' of the California
24 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in
25 light of the evidence.'" *Hayward*, 603 F.3d at 562-63.

26  The analysis of whether some evidence supports the denial of parole to a California state

inmate is framed by the state's statutes and regulations governing parole suitability determinations. *See Irons*, 505 F.3d at 851. A reviewing court "must look to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by 'some evidence' [] constituted an unreasonable application of the 'some evidence' principle." *Id.*

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers. The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

CAL. CODE REGS. tit. 15, § 2402(b). The regulation also lists specific circumstances which tend to show suitability or unsuitability for parole. *Id.* § 2402(c)-(d).

Under the applicable state regulations, factors relating to a commitment offense tend to show unsuitability for parole where (A) multiple victims were attacked, injured or killed; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; or (E) the motive for the crime is inexplicable or very trivial in relation to the offense. *Id.* § 2402(c)(1)(A)-(E).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

9

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

*Id.* § 2402(d)(1)-(9).

The overriding concern is public safety and the focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205, 82 Cal. Rptr. 3d 169, 190 P.3d 535 . Thus, the proper articulation of the standard of review is not whether some evidence supports the stated reasons for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal. 4th at 1254, 82 Cal. Rptr. 3d 213, 190 P.3d 573. There must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227, 82 Cal. Rptr. 3d 169, 190 P.3d 535.

2. State Court Decision

10

1  Here, because the California Supreme Court and California Court of Appeal summarily
2  denied the petition, the state court decision appropriate for review is the Superior Court's
3  decision. In applying AEDPA's standards, this Court finds the Superior Court properly held that
4  "the [B]oard came to a decision that was proper as there was some evidence in the record to
5  support it." *See* Resp't's Answer Ex. 2, at 6. The Superior Court found that the Board
6  articulated additional negative factors, aside from those related to the commitment offense,
7  which weighed in favor of denying parole. The Supreme Court considered Petitioner's (1)
8  commitment offense; (2) lack of participation in a domestic violence program; (3) institutional
9  behavior; (4) psychological evaluation; and (5) unrealistic post-parole employment plans. *See*
10  Resp't's Answer Ex. 2, at 3.

### a. Commitment Offense

First, the Superior Court correctly noted that "[t]he Board properly considered the gravity and circumstances of the commitment offense as provided under California law." *See* Resp't's Answer Ex. 2, at 5. The Board read into the record the summary of Petitioner's commitment offense, taken from a report prepared for the Board in 2007. *See supra* Part IV. At the hearing and in summary, the Board explained its reliance, in part, on Petitioner's commitment offense as follows:

> This prisoner did commit the offense in a very cruel manner. Specifically, he made the decision to arm himself with a loaded weapon and take the life of a person that he supposedly cared for. He had ample opportunities to walk away. He did not. Instead, he escalated to a point of extreme violence and shot this woman in the back of her head, and then decided to dispose of the body and to cover up and went to extreme lengths to cover up any – almost any existence of this woman and his relationship with her. Very very calculated in the way that she was disposed of and what happened to her personal property after the crime occurred. She was definitely defiled and mutilated after being shot to death. . . . And the motive was because of anger and rage, and according to the prisoner, not directed so much at the victim. But she just got the brunt of it. . . . I feel that you've been attending a lot of different things . . . [b]ut I can say from my perspective, I did not feel that you were quite getting it. And I also didn't feel that you were

11

being very forthright with the Panel." Resp't's Answer Ex. 1, pt. 2, at 51-52; Parole Hr'g Tr. 113-14.

Petitioner indicated that the Board's summary was "a fairly accurate summary of what happened on that day." Resp't's Answer Ex. 1, pt. 1, at 59; Parole Hr'g Tr. 14. Petitioner, however, denied that his relationship with Ms. Jacobsen had sadomasochistic tendencies, and that he was physically abusive to Ms. Jacobsen. Resp't's Answer Ex. 1, pt. 1, at 59-60; Parole Hr'g Tr. 14-15. Petitioner also maintained that "there wasn't a plan" to kill and dispose of the body. Resp't's Answer Ex. 1, pt. 1, at 71; Parole Hr'g Tr. 26. Additionally, the Deputy District Attorney pointed out that Petitioner changed his trial testimony, where Petitioner thought Ms. Jacobsen "was still alive when he left the apartment," to "he's telling us that he knew she was dead." Resp't's Answer Ex. 1, pt. 2, at 33; Parole Hr'g Tr. 95. The Deputy District Attorney opined that Petitioner believed the "different story" will get him "off the hook . . . for not attempting to obtain medical help, because that was raised by the Board members at the last hearing." Resp't's Answer Ex. 1, pt. 2, at 33; Parole Hr'g Tr. 95. Thus, the Superior Court appropriately held that the Board properly relied on Petitioner's commitment offense in part when denying parole.

### b. Lack of Participation in a Domestic Violence Program

Second, the Superior Court rightfully recognized that "[t]he Board also found that Petitioner had not sufficiently participated in self-help programs, specifically in the areas of domestic violence, while institutionalized."[2] Resp't's Answer Ex. 2, at 3. When rendering its decision at the hearing, the Board bluntly advised Petitioner "to participate in and complete some type of self-help and programming that deals with relationships with women." Resp't's Answer Ex. 1, pt. 2, at 52; Parole Hr'g Tr. 114. The Board reasoned that in prison, Petitioner was not a threat because he was "surrounded by men," and Petitioner did not have "so many women to pick

---

[2] Petitioner alleges that he is on the waiting list for Victim-Offender Reconciliation Group (VORG). *See* Resp't's Answer Ex. 1, pt. 1, at 102; Parole Hr'g Tr. 57.

on" in a "structured environment." Resp't's Answer Ex. 1, pt. 2, at 53; Parole Hr'g Tr. 115. However, when Petitioner "felt out of control," "that time is when he killed someone." Resp't's Answer Ex. 1, pt. 2, at 54; Parole Hr'g Tr. 116. The Board recognized that "[t]hose are big issues in the world of domestic violence." Resp't's Answer Ex. 1, pt. 2, at 54; Parole Hr'g Tr. 116.

Additionally, the Board encouraged Petitioner to "[r]ead" and "look at videos" because Petitioner is "a smart man." Resp't's Answer Ex. 1, pt. 2, at 53; Parole Hr'g Tr. 115. The Board recommended that Petitioner "[b]e able to write down . . . something that makes sense to you and how you use it in your everyday life to succeed." Resp't's Answer Ex. 1, pt. 2, at 53; Parole Hr'g Tr. 115. The Board also asked Petitioner to "cooperate with clinicians in updating the psychological evaluation before you come before eth [sic] Panel." Resp't's Answer Ex. 1, pt. 2, at 53; Parole Hr'g Tr. 115. Thus, the Superior Court properly held that the Board determined Petitioner did not have sufficient self-programming, specifically in domestic violence.

### c. Institutional Behavior

Third, the Superior Court appropriately observed that "Petitioner had also received three 115's." Resp't's Answer Ex. 2, at 3. At the hearing, the Board noted Petitioner received a "total of three 115 violations[,] the last in March of '01[;] and two 128 violations[,] the last in April '01. . . . [T]he April '01 128 was reduced from a 115." Resp't's Answer Ex. 1, pt. 1, at 51; Parole Hr'g Tr. 96. The 115 and 128 violations in 2001 were for "possession of unassigned or un-issued property." Resp't's Answer Ex. 1, pt. 1, at 52; Parole Hr'g Tr. 97. The Superior Court, therefore, properly found that the Board considered Petitioner's institutional behavior when denying parole.

### d. Psychological Evaluation

Fourth, the Superior Court properly stated that "[t]he most recent psychological report, dated August 17, 2007, was not fully supportive of release, in that the psychologist diagnosed Petitioner with having adult antisocial behavior and suggested that he become involved with

13

some type of marital or relationship counseling." Resp't's Answer Ex. 2, at 3. At the hearing, the Board observed that the Petitioner was diagnosed with "antisocial behavior" during his psychiatric evaluation performed on August 17, 2007. Resp't's Answer Ex. 1, pt. 1, at 100; Parole Hr'g Tr. 55. During this evaluation, Petitioner admitted that he was "immature, arrogant, and confident that [he] had all the right answers." Resp't's Answer Ex. 1, pt. 1, at 101; Parole Hr'g Tr. 56. The psychotherapist stated that Petitioner did not "present as a candidate for noteworthy change with regards to psychotherapy" but recommended that he "remain continuously involved in self-help . . . as well as some kind of counseling or program with regards to relationships, marital or otherwise." Resp't's Answer Ex. 1, pt. 1, at 102; Parole Hr'g Tr. 57. Thus, the Superior Court properly determined that the Board reviewed Petitioner's psychological evaluation when denying parole.

### e. Unrealistic Post-Parole Employment Plans

Finally, the Superior Court found that "Petitioner didn't present the panel with any documented evidence of employment" as to his parole plans. Resp't's Answer Ex. 2, at 3. The Board found that, "number one, [Petitioner] came across way too glib and way too arrogant" about his ability to find a job if paroled. Resp't's Answer Ex. 1, pt. 2, at 55; Parole Hr'g Tr. 117. Petitioner failed to recognized that he would have "one heck of a time getting a job" because he would have "a new name at the end of [his] title, and it's called felon." Resp't's Answer Ex. 1, pt. 2, at 55; Parole Hr'g Tr. 117. The Board was not concerned about "what [Petitioner's] sister can do for [him]," but what Petitioner could do for himself. Resp't's Answer Ex. 1, pt. 2, at 55; Parole Hr'g Tr. 117. The Board, however, could not "force" Petitioner to "get a job." Resp't's Answer Ex. 1, pt. 2, at 55; Parole Hr'g Tr. 117.

Instead, the Board "can recommend" that Petitioner assemble "a resume and a budget, so we know that you have an idea of what it's like to contribute to a household." Resp't's Answer Ex. 1, pt. 2, at 55; Parole Hr'g Tr. 117. The Board also encouraged Petitioner to "send letters out to employers" and "save those letters," because "[p]eople that are in grants earn grants." Resp't's

Answer Ex. 1, pt. 2, at 55-56; Parole Hr'g Tr. 117-18. Those people "usually have three, four or five or six job offers sitting in front of them, because they've done the legwork themselves." Resp't's Answer Ex. 1, pt. 2, at 56; Parole Hr'g Tr. 118. Thus, the Superior Court properly held that the Board found Petitioner's post-parole employment plans to be inadequate.

In sum, the Superior Court reasonably concluded that the Board "did not abuse its discretion when it denied Petitioner a parole release date in 2007" because "the Board considered the activities he participated in while he was incarcerated, his evaluations, and his institutional behavior." *See* Resp't's Answer Ex. 2, at 5-6. These other factors demonstrate a nexus between the facts in the record regarding Petitioner's commitment offense and the ultimate conclusion that Petitioner still posed a risk of danger or threat to the public. These other factors also independently demonstrate some evidence in the record that Petitioner was not suitable for parole. Accordingly, the Superior Court properly concluded that the Board's decision withstands the minimally stringent "some evidence" test and has not violated Petitioner's right to due process of law.

## VII. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Petitioner's request for an order to show cause is DENIED as moot;

2. Petitioner's request for appointment of counsel is DENIED; and

3. Petitioner's request for an evidentiary hearing is DENIED.

IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

1  shall be served and filed within seven days after service of the objections. Failure to file
2  objections within the specified time may waive the right to appeal the District Court's order.
3  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57
4  (9th Cir. 1991). In any objections he elects to file, Petitioner may address whether a certificate of
5  appealability should be issued in the event he elects to file an appeal from the judgment in this
6  case. *See* Rule 11(a), Federal Rules Governing Section 2254 Cases (district court must issue or
7  deny certificate of appealability when it enters final order adverse to applicant).
8  DATED:    September /*r*, 2010.

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE

16